1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9

10    RICHARD HAROLD LANDIS,

11              Plaintiff,

12        v.

13    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
14    REHABILITATION, *et al.*,

15              Defendants.

16

17

18

Case No.  1:23cv-01490-KES-BAM (PC)

FINDINGS AND RECOMMENDATIONS
REGARDING DISMISSAL OF CERTAIN
CLAIMS AND DEFENDANTS

ORDER DISCHARGING ORDER TO SHOW
CAUSE REGARDING EXHAUSTION OF
ADMINISTRATIVE REMEDIES

ECF No. 17

**FOURTEEN (14) DAY DEADLINE**

19
20        Plaintiff Richard Harold Landis ("Plaintiff") is a state prisoner proceeding *pro se* and *in*

21    *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened

22    Plaintiff's complaint and Plaintiff's first amended complaint is currently before the Court for

23    screening. (ECF No. 17.)

      **I.       Screening Requirement and Standard**

24        The Court is required to screen complaints brought by prisoners seeking relief against a

25    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

26    § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

27    or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

28

1   relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

2          A complaint must contain "a short and plain statement of the claim showing that the

3   pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

4   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5   conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

6   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

7   true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

8   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

9          To survive screening, Plaintiff's claims must be facially plausible, which requires

10   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

11   for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

12   *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

13   is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

14   standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

15   **II.      Plaintiff's Allegations**

16          Plaintiff is currently housed at the California Institution for Men in Chino, California.

17   Plaintiff alleges the events in this action arose while Plaintiff was housed at California State

18   Prison in Corcoran, California ("Corcoran").  Plaintiff names the following defendants: (1)

19   California Dpartment of Corrections and Rehabilitation ("CDCR"), (2) John Doe 1, correctional

20   officer, (3) John Doe 2, correctional officer, (4) Lt. J. Barrios, (5) Moreno, third watch sergeant,

21   A yard, (6) Jane Doe, Nurse, on duty on 9/22/22 at 3:30 p.m. to 4:00 p.m. in the front medical

22   window, (7) S. Pena, correctional officer second watch A yard, 1-Block, (8) Wooden, correctional

23   officer, second watch A yard, 1-Block, (9), Correctional officer Diaz, third watch, A-yard, 1-

24   Block,  (10) Hernandez, correctional officer, third watch tower officer, A-yard, 1 Block, (11) J.

25   Torres (male), correctional officer, A-Yard, 1-Block.

26          In claim 1, Plaintiff alleges that he was not given a fair disciplinary hearing.  Plaintiff

27   alleges that while documentation of the disciplinary hearing said that Plaintiff was given the

28   opportunity to view video footage of an assault on him, Plaintiff alleges the documentation is

1  false.  Correctional officer Hudson denied Plaintiff a fair hearing.  Plaintiff was not allowed the

2  opportunity to present the video footage to show that Plaintiff was assaulted in front of 5-6

3  officers and nothing was done to protect Plaintiff. Correctional officer Hudson asked if Plaintiff

4  wanted to see the video footage and Plaintiff said yes, but Correctional officer Hudson got a pen

5  so Plaintiff could sign the form indicating he wanted to see the footage.  Hudson then said that he

6  did not have a pen and would later have Plaintiff sign, but he never came to Plaintiff to have

7  Plaintiff sign the form saying Plaintiff wanted to see the video footage.  The 5-6 officers turned

8  their backs on Plaintiff while he was on the ground bleeding and getting assaulted.  Plaintiff did

9  not get their names and Correctional officer Hudson would not tell Plaintiff who they were.  Once

10  Plaintiff got inside the medical office after getting assaulted by the inmate in front of all those

11  officers who did nothing to help Plaintiff, John Doe 1 and John Doe 2 both saw the blood coming

12  from Plaintiff's head.  They did not nothing to help Plaintiff.  One officer even said that he saw

13  Plaintiff get assaulted to another officer.  The nurse Jane Doe 1 pointed out the inmate to both of

14  these officers.  Both asked Plaintiff "did you get assaulted" and Plaintiff told them "yes" and he

15  will get me again.  The nurse pointed out the inmate who had assaulted Plaintiff to the officers

16  and so did Plaintiff.  They both did nothing and told Plaintiff you'll be ok, go back out there.

17  Plaintiff told the sergeant who placed Plaintiff in a cage.

18       Plaintiff went back out to the yard and he was assaulted again.  Plaintiff suffered a

19  concussion.  Both John Doe 1 and John Doe 2 and Jane Doe all pointed out the inmate who

20  assaulted Plaintiff.  But one of the officers said, "you should beat him down Landis, go get him"

21  Plaintiff asked for help, but Plaintiff had no choice but to walk back out to the yard.  Once

22  Plaintiff was 20 feet from medical office, Plaintiff got seriously injured by the same inmate again.

23       In claim 2, Plaintiff alleges the entire disciplinary hearing results are forged, false and

24  everybody involved falsified the paper work.  Correctional officer Sierra, Correctional officer

25  Pena worked together and with Lt. Barrios who wrote and signed the disciplinary hearing results.

26  All of the officers did was the Corcoran "green wall gang."  Correctional officer Sierra wrote the

27  RVR on 8-14-22 but 4 days before giving Plaintiff the write up, Correctional officer Sierra asked

28  Plaintiff if Plaintiff had some good information to give about cell phones, etc.  Plaintiff said "yes"

and still Correctional officer Sierra wrote up Plaintiff and told inmates that Plaintiff was a "snitch," which led to Plaintiff getting assaulted.

In claim 3, Plaintiff alleges that on 9-8-22, Lt. Barrios caught Plaintiff in the program office and asked Plaintiff if he was ready for the hearing.  Plaintiff said no and Plaintiff was never asked if Plaintiff wanted witnesses to be present or see the video footage or sign a form that Plaintiff did not want to see the video footage. Plaintiff alleges that the signature on the form saying he did not want to see the footage is not his.  Lt Barrios told Plaintiff to write down who brings in drugs, who had cell phones, and to bring it to his office the next day.  Plaintiff did so. The day he brought it in, Plaintiff was assaulted due to Lt. Barrios letting a program worker inmate get the envelope and read it.  The entire yard saw it and Plaintiff was assaulted. Plaintiff alleges that because Lt. Barrios and correctional officer Pena are good friends, they talked to get "get this done."  Plaintiff was assaulted in front of 5-6 officers and nothing was done.  Once inside the medical dept, the officers did nothing to prevent Plaintiff from being assaulted.

Lt. Barrios told Plaintiff that Plaintiff can write confidential information and Barrios would drop the 115.  "Once Plaintiff upset c/o N. Pena and she told Inmate John Lowell to get rid of me and all the other officers to 'dog me out.'"  Plaintiff was not allowed to help with inmate tutor/mentor.  Plaintiff's chrono allows him to go to other buildings as a mentor/tutor, but Plaintiff was not allowed out of his cell.  Plaintiff was complying with all rules, but Plaintiff was not allowed out of his cell.

In further pages of the first amended complaint, Plaintiff states the following factual allegations.  (ECF No. 17, p. 11.) In claim 1, Plaintiff alleges Eighth and Fourteenth Amendments violations for threat to safety, failure to protect, and negligence.  Plaintiff was walking to get his diabetic shot.  An inmate (Hunter) ran up and started to assault Plaintiff.  Plaintiff notes that there is a video and Plaintiff asked to see the video and correctional officer Hudson did not get the application for Plaintiff to sign to preserve the video.  The assault took place in front of 5-6 correctional officers and as the video showed, everyone one of them let the assault occur. Once inside the medical office, correctional officer John Doe 1 and John Doe 2 both Hispanic officers, saw the blood from Plaintiff's head dripping down Plaintiff's face.  They both did nothing and the

RN nurse also saw the assault take place.  She told the officer and pointed out inmate Hunter and again "they" did nothing to protect Plaintiff.  They all allowed it to happen.  John Does 1 and 2 failed to protect Plaintiff and Jane Doe as well (the 3:00 p.m. to 4:00 p.m. nurse).  The video all caught this and Plaintiff never refused to see the video footage.

In claim 2, Plaintiff alleges Eighth, Fourteenth, and First Amendments violations, threat to safety, failure to protect. In July of 2022, correction officer Pena was told by inmate John Howell, who was a millionaire and paid correctional officer Pena money to bring in cell phones, drugs, that Plaintiff had put Pena's name out there and correctional officer Pena called Plaintiff into the officer.  Pena told Plaintiff you have nothing coming and I'm shutting you down.  Plaintiff would stay out all night and all day and pass out lessons to inmates, tutor, and mentor the inmates.  Once Pena told Plaintiff this, she told all of the named defendants to never let Plaintiff out of his cell to help people.  John Howell was told by correctional officer Pena to get rid of Plaintiff and get Plaintiff off the yard.  She use to ask Plaintiff to not sign up certain inmates for the phone. Correctional officer Sierra falsified Plaintiff's RVR and looked at the video footage on that day 8/14/22.  Plaintiff did not delay count/lock up for 30 minutes.  The 115 was deemed no good due to Plaintiff's rights being violated.  Plaintiff refers to exhibit C.  The disciplinary hearing results, where it states that Plaintiff plead guilty to the RVR (Exhibit B), but Plaintiff never had a hearing. Plaintiff was waiting on the RVR itself.  (Plaintiff refers to "see attached (2)," but the Court has been unable to locate an attachment 2).[1]

Plaintiff alleges that he was assaulted and 5-6 officers saw it and did nothing.  Plaintiff walked into medical and told 2 officers what happened and a nurse yet nothing was done and both of the officers allowed Plaintiff to get assaulted again.  Plaintiff was unable to go to the Board and because false 115 and falsified paperwork, Plaintiff would have been found suitable (for parole).

---

[1] The Court has reviewed the 41 pages submitted as part of and in support of the first amended complaint.  There does not appear to be any gap in the factual allegations (pages 1-8 and also pages 1-5 of the first amended complaint) and while disjointed, the Court has reviewed the allegations in their entirety, along with attached Exhibits A-E.

1

2       Plaintiff also alleges state law claim for negligence based on these events. As remedies,

3   Plaintiff seeks damages and to be released due to his health.  See Exhibit E.

4      **III.**    **Discussion**

5      **A.**     **Federal Rule of Civil Procedure 8 and Linkage**

6       Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

7   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations

8   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

9   conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must

10   set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

11   its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

12   are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

13   572 F.3d at 969.

14       Here, Plaintiff's complaint is relatively short.  It is not a plain statement of his claims

15   showing that he is entitled to relief.  Many of Plaintiff's allegations are conclusory do not state

16   what happened, when it happened, or which defendant was involved. The allegations are

17   disjointed and do not flow in any logical manner. General assertions regarding who knew what

18   about Plaintiff are not sufficient, and Plaintiff may not merely state the elements of a cause of

19   action without providing any factual allegations in support of his claims.  Further, Plaintiff

20   improperly joins claims and the jumble of references are confusing.

21      As Plaintiff was previously informed, Section 1983 plainly requires that there be an actual

22   connection or link between the actions of the defendants and the deprivation alleged to have been

23   suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Rizzo v. Goode*, 423

24   U.S. 362 (1976). Plaintiff fails to link any defendant who did not stop the attack outside the

25   medical department on 9/22/22.  Plaintiff fails to link Defendants Moreno, Wooden, Diaz,

26   Hernandez, and Torres to any alleged constitutional violation.  Plaintiff may not simply assert that

27   a deprivation occurred and then accuse a group of defendants of being "responsible" for that

28   deprivation.  Plaintiff was previously informed of this deficiency, and Plaintiff has failed to cure

1    this deficiency.

2    **B.     Federal Rules of Civil Procedure 18 and 20**

3          Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed.

4    R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*,

5    507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec.

6    11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021).

7    Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the

8    same transaction or occurrence, or series of transactions and occurrences, and (2) there are

9    commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348,

10   1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual

11   background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a)

12   will the Court review the other claims to determine if they may be joined under Rule 18(a), which

13   permits the joinder of multiple claims against the same party.

14         Plaintiff may not raise different claims against different defendants in a single action. For

15   instance, Plaintiff may not state unrelated claims for failure to protect, disciplinary proceedings,

16   being called a snitch, being forced to snitch, etc.  Unrelated claims involving multiple defendants

17   belong in different suits.  The complaint is a series of multiple incidents which happened while

18   Plaintiff was housed at Corcoran; merely because Plaintiff was housed at Corcoran when the

19   incidents occurred does not make every injury or incident related.  As Plaintiff was previously

20   informed, Plaintiff may not pursue unrelated claims, and if unrelated claims are joined, the Court

21   will select which cognizable claim may proceed. Separate unrelated claims must be filed in

22   separate lawsuits.

23   **C.     Supervisory Liability**

24         To the extent Plaintiff seeks to hold any defendant liable based solely upon their

25   supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the

26   actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S.

27   at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City*

28   *of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### D. Eleventh Amendment Immunity

The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for damages or injunctive relief against the State, CDCR, or Corcoran in this action.

///

8

1    **E.     Fourteenth Amendment - Due Process**

2                    <u>Due Process and Disciplinary Hearing</u>

3            It appears Plaintiff claims Due Process violations for being falsely accused of conduct and

4    possibly, false disciplinary hearing.

5            Prisoners do not have a liberty interest in being free from false accusations of misconduct.

6    The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se

7    violation of the prisoner's constitutional rights. *See Muhammad v. Rubia,* 2010 WL 1260425, at

8    *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no

9    constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

10   may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded

11   procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a

12   claim under § 1983.") (citations omitted); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal.,

13   June 16, 2009), aff'd, 393 Fed. App'x 488 (9th Cir. 2010) ("Although the Ninth Circuit has not

14   directly addressed this issue in a published opinion, district courts throughout California ... have

15   determined that a prisoner's allegation that prison officials issued a false disciplinary charge

16   against him fails to state a cognizable claim for relief under § 1983."). Plaintiff fails to state a

17   claim for the purportedly false accusations.

18           The Due Process Clause of the Fourteenth Amendment protects prisoners from being

19   deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

20   "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

21   rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum

22   procedural requirements that must be met in such proceedings are: (1) written notice of the

23   charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of

24   the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact

25   finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the

26   prisoner to call witnesses in his defense, when permitting him to do so would not be unduly

27   hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

28   where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. As long

1    as the *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d

2    1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472

3    (1995). In addition, "some evidence" must support the decision of the hearing officer,

4    *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of

5    reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is

6    not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record

7    that could support the conclusion reached...." *Hill*, 472 U.S. at 455–56 (emphasis added).

8        Plaintiff's conviction on the RVR appears to have been reversed. Plaintiff alleges he was

9    not permitted to call witnesses or see the video footage, and documents with his signature were

10    forged, among other things. Plaintiff may be able to state a cognizable claim, but this claim is

11    improperly joined.

12                  <u>No Right to Early Parole</u>

13        Plaintiff cannot maintain a due process claim, or any other claim, based on denial of early

14    parole consideration, because he has no protected property interest in parole. There is no right

15    under the U.S. Constitution to be conditionally released before the expiration of a valid sentence.

16    *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *see also*

17    *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d

18    668 (1979) (there is no federal constitutional right to parole). It follows that there is no

19    constitutional right to parole consideration. *See Fernandez v. Nevada*, No. 3:06-CV-00628 LRH-

20    RA, 2008 U.S. Dist. LEXIS 131876, 2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009). And

21    where there is no liberty interest in parole eligibility or parole, there can be no due process

22    violation. *Id.*

23             **F. Eighth Amendment – Failure to Protect**

24        The Eighth Amendment requires that prison officials take reasonable measures to

25    guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. at 832. In particular, prison

26    officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833;

27    *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040

28    (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629

1  F.2d 637, 642 & n.3 (9th Cir. 1980).

2        The failure of prison officials to protect inmates from attacks by other inmates or from

3  dangerous conditions at the prison violates the Eighth Amendment when two requirements are

4  met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

5  subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison

6  official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health

7  or safety by failing to take reasonable steps to abate it. *Id*. at 837.

8        A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials

9  only where the officials acted with "deliberate indifference" to the threat of serious harm or injury

10  to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); see also

11  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor

12  that prisoner is snitch may state claim for violation of right to be protected from violence while in

13  state custody), or by physical conditions at the prison. The official must both be aware of facts

14  from which the inference could be drawn that a substantial risk of serious harm exists, and he

15  must also draw the inference. *See Farmer*, 511 U.S. at 837. Mere negligent failure to protect an

16  inmate from harm is not actionable under Section 1983. *See Farmer*, 511 U.S. at 835.

17        Plaintiff does not state cognizable claims against the 5-6 officers who saw Plaintiff get

18  assaulted and did not stop the assault. Plaintiff fails to link any Defendant to the conduct for

19  failing to stop the initial attack outside of the medical office. Plaintiff does not identify any

20  Defendant or even identify a Doe defendant as involved, even though Plaintiff knows how to

21  name "Doe" defendants.  Plaintiff was previously informed that he must link each defendant who

22  was responsible for alleged constitutional violations, and he has failed to cure this deficiency.

23        Plaintiff fails to state a claim against John Does 1 and 2 for failing to prevent the initial

24  attack on Plaintiff outside of the medical department (before Plaintiff sought refuge in the

25  medical department) because the allegations are too conclusory as to what each officer saw and

26  whether they were in a position to prevent an attack. However, Plaintiff states a claim against

27  John Does 1 and 2 who sent Plaintiff back to the yard after Plaintiff had sought refuge in the

28  medical office and Plaintiff was assaulted a second time.  They were informed that Plaintiff had

attacked and that the attacker was waiting just outside the medical office. In addition, while Plaintiff says that Defendants J. Barrios and Sierra leaked that Plaintiff was a snitch, Plaintiff fails to state factual support for this claim and his allegations are conclusory.  Moreover, this claim is improperly joined with unrelated claims.

### G.  Prison Employment

Plaintiff fails to state a cognizable claim under either the Fourteenth Amendment or Eighth Amendment for loss of his prison tutor job.

There is no constitutional right to a prison job. "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment[.]' " *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986) (per curiam); and citing *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir.1985)); *see also Rainer v. Chapman*, 513 Fed.Appx. 674, 675 (9th Cir. 2013) (holding that the district court properly dismissed the California prisoner-plaintiff's "due process claims based on his removal from his work assignment and transfer from the facility where his job was located because these allegations did not give rise to a constitutionally protected liberty or property interest.") A prison job is not a basic human need and the loss thereof does not give rise to an Eighth Amendment violation. *See Barno v. Ryan*, 399 F. App'x 272, 273 (9th Cir. 2010) (unpublished opinion); *accord Schessler v. Kostecky*, No. 1:23-CV-01012 BAM PC, 2023 WL 8437599, at *5 (E.D. Cal. July 28, 2023).

### H.  State Law Claims

To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort

1   Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal.4th at 1244. "[F]ailure to allege facts
2   demonstrating or excusing compliance with the requirement subjects a complaint to general
3   demurrer for failure to state a cause of action." *Bodde*, 32 Cal.4th at 1239.

4       Plaintiff does not allege that he has complied with the Government Claims Act, despite
5   being given the pleading and legal standards.

6               **I.   Retaliation**

7       It is unclear what Plaintiff's First Amendment Retaliation claims is.  Prisoners have a First
8   Amendment right to file grievances against prison officials and to be free from retaliation for
9   doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584
10  F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment
11  retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action
12  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)
13  chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
14  advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir.
15  2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A
16  plaintiff must plead facts showing that their "protected conduct was the substantial or motivating
17  factor behind the defendant's conduct." Id. at 1271. To state a cognizable retaliation claim,
18  Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v.*
19  *Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

20      Plaintiff fails to state a cognizable claim.  Plaintiff has failed to allege the facts for each of
21  the elements of a claim for retaliation. Plaintiff's allegations are conclusory as to any protected
22  conduct he in engaged in and fails to allege he engaged in protected conduct. Plaintiff fails to
23  allege that any conduct chilled Plaintiff's First Amendment rights or that it did not reasonably
24  advance a legitimate correctional goal.  Plaintiff has been unable to cure this deficiency.

25               J.   **Failure to Exhaust Administrative Remedies**

26      Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be
27  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a
28  prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In screening Plaintiff's complaint, it appeared that Plaintiff had filed suit prematurely without first exhausting his administrative remedies in compliance with the PLRA.  In the Court's screening order (Doc. 8), the Court instructed Plaintiff to file a first amended complaint to explain why he did not exhaust his administrative remedies.

In his first amended complaint, Plaintiff alleges his administrative grievance process is completed. (Doc. 17, p.10.)  Plaintiff alleges that the appeal was granted at the third level and a reissue-rehearing was ordered.  Plaintiff refers to an attached Exhibit A.  The Exhibit A attached to the complaint is an Office of Appeals Decision which states that, "This decision exhausts the administrative remedies available to the claimant within CDCR."  (ECF No. 17, p.16.)  This Exhibit A is sufficient for purposes of screening to show that Plaintiff exhausted administrative remedies.  The Order to Show Cause is DISCHARGED.

Plaintiff is informed that the Defendants are not precluded from bringing an appropriate motion under Federal Rule of Civil Procedure 56 to show Plaintiff failed to exhaust his administrative remedies, and this Order does not conclusively determine the exhaustion issue.

### IV.    Conclusion

The Order to Show Cause regarding exhaustion of administrative remedies is DISCHARGED.

For the reasons stated, the Court finds that Plaintiff states a cognizable claim against Defendant John Doe 1 and John Doe 2,[2] correctional officers, for failure to protect in violation of

---

[2] Plaintiff is advised that John Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe.

1   the Eighth Amendment when John Doe 1 and John Doe 2 sent Plaintiff back to the yard from the

2   medical office.  However, Plaintiff's complaint fails to state any other cognizable claims against

3   any other defendants.  Despite being provided with the relevant pleading and legal standards,

4   Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not

5   warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

6          Furthermore, it is HEREBY RECOMMENDED that:

7   1.   This action proceed on Plaintiff's first amended complaint, filed June 24, 2024, (ECF No.

8          15), against Defendant John Doe 1 and John Doe 2, correctional officers, for failure to

9          protect in violation of the Eighth Amendment in violation of the Eighth Amendment; and

10  2.   All other claims and defendants be dismissed based on Plaintiff's failure to state claims

11         upon which relief may be granted.

12                                          * * *

13         These Findings and Recommendations will be submitted to the United States District

14  Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after

15  being served with these Findings and Recommendations, Plaintiff may file written objections

16  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

17  and Recommendations."  Plaintiff is advised that the failure to file objections within the specified

18  time may result in the waiver of the "right to challenge the magistrate's factual findings" on

19  appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923

20  F.2d 1391, 1394 (9th Cir. 1991)).

21

22  IT IS SO ORDERED.

23    Dated:   __June 27, 2024__                  ____/s/ Barbara A. McAuliffe____

24                                               UNITED STATES MAGISTRATE JUDGE

25

26

27

28

15